Christian Fricke, Pius Hemler and the corporation of the borough of Port Carbon, Appellants, *v.* John F. Quinn and William R. McTurk, W. R. Tyler and Richard White, trading as Tyler, McTurk & Company, and the Mill Creek Coal Company.

*Equity—Equity pleading—Waiver of technical objections.*

While the Supreme Court will not encourage loose or careless or inaccurate pleadings, it will consider technical objections to a bill in equity as waived, where such objections are not made promptly, and where the defects alleged do not touch the merits of the case, nor subject either party to unfair burdens or unjust results.

*Equity—Equity pleading—Equity practice—Amendment after trial upon the merits.*

Where an equity case has been tried by the master upon the merits, and has been passed upon by the court on exceptions to the master's report, a motion for leave to amend the bill so as to meet merely technical objections should be allowed, where the substantial cause of action is not proposed to be changed, but the amendment is to specify and define what the bill had left general and indefinite.

*Equity—Equity pleading—Injunction—Waters—Pollution of stream.*

It is the right of a riparian owner to have the natural flow of the stream reach his land in its natural channel and in its natural condition.

An averment in a bill in equity for an injunction that the channel of a stream was filled up or diverted by the defendants, and that the bed of the stream was raised so as to obstruct its current and prevent drainage into it, is an averment of unlawful interference with complainants' rights. The

specific injury resulting therefrom should, in good pleading, be set forth with reasonable particularity, but, if it be not done, this fault may be waived by failure to object to it in time.

An averment in a bill in equity that the defendants had deposited large quantities of culm, muck and dirt in the bed of a stream is sufficient to cover a finding by the master that the defendants had " polluted " the stream.

Argued Feb. 14, 1898. Appeal, No. 236, Jan. T., 1897, by plaintiffs, from decree of C. P. Schuylkill Co., July T., 1892, No. 3, on bill in equity. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Bill in equity for an injunction.

The bill averred as follows:

1. The borough of Port Carbon, one of said complainants, is a municipal corporation in the said county of Schuylkill, the other complainants being residents and property owners in said borough. From time immemorial there has flowed through the said borough of Port Carbon a stream known as the Schuylkill river, into which stream flows another called the Mill creek, forming a junction with it near the property of Christian Fricke. This latter stream flows from St. Clair in a southerly direction, in an irregular course through the center of the borough of Port Carbon to the junction aforesaid, forming the natural drainage channel of the said borough.

2. The defendants engaged in the business of mining, preparing, washing or cleaning of anthracite coal, as follows: John F. Quinn, W. R. Tyler, McTurk & Company, at New Castle; and the Mill Creek Coal Company, a corporation, at New Boston; all upon the banks of the Mill creek or its tributaries. Each and all of them for some time past have, and at the present time are, depositing in said creek large quantities of coal dirt and other refuse from the said mines, collieries and washeries owned and operated by them, and not only filling up the channel or course of said streams, but are diverting it from its proper channel, impeding the proper flow of the streams, depositing large quantities of culm, muck and dirt in the bed and upon and over the legitimate banks of the said streams, filling up the drains and sewer channels leading into the said creek or river course, to the great damage and injury, not only to the property of the complainants, but as well to the health of the inhabitants of said borough.

3. Prior to the depositing of culm and dirt into the said streams by the defendants, the creek bed in each of said streams was low enough to receive the drainage of the inhabitants of the said borough, and the flow and current of the creek swift enough to carry the same away, but by reason of the acts of the defendants above named, the condition of such creek or river channels is such that the drain mouths are blocked up, the drainage is dammed back into the cellars of the inhabitants, and great damage is done to the property of the complainants, and their health, and the health of all the inhabitants of said borough is seriously threatened thereby.

4. All of the said defendants have either at their collieries, or at a washery connected with their collieries—a system of cleaning coal, whereby large quantities of water are passed over the coal and thence heavily charged with coal dirt and sediment, the said water is carried either directly into the creek channel, or first into settling tanks. By reason of the large quantities of dirt and water, the main mass of this refuse or coal dirt gets either directly or indirectly into the creek channel, causing the said creek channel to be choked and causing the damage above set forth. Defendants have been notified to desist from emptying their said dirt, refuse and water, etc., into the said creeks and streams, but in violation of the said notice they persist in so doing to the great and irreparable damage of the complainants as aforesaid.

The master, E. D. Smith, Esq., found the facts to be as follows:

1. The borough of Port Carbon is a municipality in the county of Schuylkill, and Christian Fricke, the complainant, is a resident of said borough.

2. Mill creek forms a part of the natural drainage of the borough of Port Carbon.

3. John F. Quinn, one of the defendants, has deposited in the Mill creek at his washery at Darkwater, New Castle township, Schuylkill county, large quantities of coal dirt, culm, muck and refuse from the washing of coal in said Mill creek, and said acts were continued by Wyms & Eagan, successors and assignees of the said John F. Quinn, at said washery. William R. McTurk, W. R. Tyler and Richard White, trading as Tyler,

McTurk & Company, have deposited in the Mill creek at their washery at Darkwater, New Castle township, Schuylkill county, Penna., large quanties of coal dirt, culm, muck and refuse of coal dirt washed at said washery in the Mill creek; and James Wyms has continued said acts, claiming under said Tyler, McTurk & Company; and the said Tyler, McTurk & Company have deposited large quantities of coal dirt and refuse from the washing of coal from their colliery, known as Roberts colliery, in New Castle township, Schuylkill county, Penna., in a tributary of the said Mill creek, and thence into said Mill creek; and the said acts were continued by A. S. Van Wickle, claiming under Tyler, McTurk & Company; and the said Wyms & Eagan and James Wyms and A. S. Van Wickle, claiming under their respective grantors, had knowledge of this proceeding at the time of their respective purchases.

4. The Mill Creek Coal Company at their colliery, known as The New Boston Colliery, on said Mill creek between May, 1892, and October 12, 1893, placed large quantities of coal dirt, culm, muck and the refuse from the washing of coal in the said Mill creek.

5. The joint acts of the said John F. Quinn, and Wyms & Eagan, Tyler, McTurk & Company and James Wyms and A. S. Van Wickle, and the Mill Creek Coal Company, by placing culm, muck and coal dirt in said Mill creek, have polluted the waters of said creek and filled the channel of said creek and thereby damaged the property of the said Christian Fricke and the borough of Port Carbon, and threatened the health of the inhabitants of the said borough.

The master recommended the following decree:

And now                    , 1896, it is hereby ordered, adjudged and decreed as follows, to wit:

1. That the said John F. Quinn, defendant, his workmen, agents, and employees and Wyms & Eagan, successors and assigns of the said John F. Quinn, their workmen, agents and employees, be perpetually restrained from discharging into Mill creek or from permitting to escape into said Mill creek from the coal washery, owned and operated by him, the said John F. Quinn, or his successors and assigns, at Darkwater, in New Castle township, in the county of Schuylkill, any coal dirt, culm or muck, water or other refuse from the washing of coal dirt,

and from polluting the waters of said Mill creek, as set forth in complainants' bill of complaint.

2. That the said William R. McTurk, W. R. Tyler and Richard White, trading as Tyler, McTurk & Company, defendants, their workmen, agents and employees, and James Wyms, successor and assigns of the said Tyler, McTurk & Company, his workmen, agents and employees, be perpetually restrained from discharging into Mill creek or from permitting to escape into said Mill creek, from the coal washery, owned and operated by them, the said Tyler, McTurk & Company, or their successors and assigns, at Darkwater, in New Castle township, in the county of Schuylkill, any coal dirt, culm or muck, water or other refuse from the washing of coal dirt, and from polluting the waters of said Mill creek, as set forth in the complainants' bill of complaint. And further, that the said Tyler, McTurk & Company, defendants, their workmen, agents and employees, and A. S. Van Wickle, successor and assigns of the said Tyler, McTurk & Company, his workmen, agents and employees, be perpetually restrained from discharging into the Mill creek or from permitting to escape, directly or by the tributary of said Mill creek, from their colliery known as the Roberts colliery, owned and operated by them, the said Tyler, McTurk & Company, or their successors and assigns, in New Castle township, in the county of Schuylkill, any coal dirt, culm or muck, water or other refuse from the washing of coal, and from polluting the waters of said Mill creek, as set forth in complainants' bill of complaint.

3. That as to the Mill Creek Coal Company, the complainants' bill be dismissed.

4. That the cost of this proceeding, including the examiner's and master's fees, be paid by the defendants, and if not paid by the defendants within twenty days from the filing of this report, that the same be paid by the complainants with right to collect the amount from the defendants, jointly or severally.

The court in an opinion by ENDLICH, J., of the twenty-third judicial district, specially presiding, dismissed the bill for the reason stated in the opinion of the Supreme Court.

After the final decree the plaintiff moved to amend the bill so as to make it conform to the facts as found by the master. The court refused to allow the amendment.

*Errors assigned* among others were (1) refusal to allow amendment; (8) in dismissing the bill.

*E. A. Beddall,* with him *J. W. Ryon,* for appellants.—The obstruction of a public stream stands upon the same principal as the obstruction of any other highway. An obstruction of a highway is an indictable nuisance. For such obstruction, a municipality may in its corporate name proceed by bill in equity for an injunction or relief: 2 Dillon on Municipal Corporations, sec. 659; Com. v. Rush, 14 Pa. 186.

Under the act of 1851 (General Borough Act) boroughs are authorized to construct sewers. Even without any special authority municipal corporations may make or adopt sewers and protect them from invasion or injury: Fisher v. Harrisburg, 2 Grant, 291; Blizzard v. Danville Borough, 175 Pa. 479; Haus v. Bethlehem Borough, 134 Pa. 14.

Even if the bill had been defective in form, and no demurrer or other exception had been taken to the bill or the testimony taken under it, an injunction should have been granted, where the testimony showed a proper cause.

The amendment should have been allowed: Brightly's Equity Jurisprudence, sec. 702; Bellows v. Stone, 14 N. H. 175; Dougherty's App., 1 W. N. C. 593; Garner's App., 1 Walker, 438; Dick's App., 106 Pa. 589; Matlack v. Mut. Life Ins. Co. of N. Y., 14 Pa. C. C. R. 188; Wall v. Royal Society, 179 Pa. 355; Miller v. McDonald, 8 W. N. C. 502.

It is never too late to amend pleadings, so long as no injury is done to the opposite party: Rose v. Rose, 1 Phila. 365; Iredell v. Klemm, 17 W. N. C. 426; City v. R. R., 15 W. N. C. 364; City v. Schuylkill River East Side R. R., 15 W. N. C. 364; Danzeisen's App., 73 Pa. 65; R. R. v. Malone, 85 Pa. 25; Souder's App., 57 Pa. 502; Myers v. Bryson, 158 Pa. 246; Walters v. McElroy, 151 Pa. 549; Commissioners v. Long, 1 Parson's Select Cases in Equity, 143.

*Guy E. Farquhar* and *Frederick Bertolette,* for the Mill Creek Coal Co.—While it is true that a rigid and technical construction of bills in equity will no longer be enforced, yet the rule that every material allegation must be put in issue by the pleading and that the probata and allegata must agree still remains

a part of the law in Pennsylvania: Thompson's App., 126 Pa. 371; Penna. Schuylkill Val. R. R. v. Philadelphia & Reading R. R., 160 Pa. 292; Traction Co. v. Canal Co., 1 Pa. Superior Ct. 413.

A party cannot vindicate other rights by process in his own name: Sparhawk v. Union Pass. Ry., 54 Pa. 401.

A party is not allowed to state one case in a bill or answer, and make out a different one by proof, but the allegata and probata must agree; the latter must support the former: Boone v. Chiles, 10 Peters, 177; McElwain v. Willis, 9 Wend. 568; Hollenback's App., 121 Pa. 322; Traction Co. v. Canal Co., 1 Pa. Superior Ct. 413.

The amendment was properly disallowed: Howard v. Borough of Olyphant, 181 Pa. 191; Hoofstitler v. Hostetter, 172 Pa. 575.

*James Ryon* and *B. W. Cumming, Jr.*, for Tyler, McTurk & Company.—A bill in equity asking relief should state with distinctness and precision the facts and circumstances upon which it relies, in order to show the plaintiff's right to relief a defect cannot be supplied by inference: Brightly's Digest, 6867; Thompson's App., 126 Pa. 371; 1 Beach on Modern Equity Practice, sec. 159.

OPINION BY MR. JUSTICE MITCHELL, November 14, 1898:

There is really no controversy before us as to the facts of this case. The master found that the defendants had polluted the water and filled up the channel of Mill creek, not by ordinary exercise of riparian rights, but by excessive and unlawful acts in the mining and washing of coal, to the injury of the complainants as lower riparian owners. The learned judge below took the same view of the facts established by the evidence and stated it in the following forcible language: " The conclusion stated, taking in as it does all of the defendants, is the irresistible inference from the testimony referred to by the master, and much besides that might be referred to. It is simply out of the question that the accumulations in the Mill creek about Port Carbon are to be accounted for upon any reasonable theory not necessarily involving the fact of actual and intentional deposits in the creek by the defendants of vast quanti-

ties of muck and culm, the noxious result of their recent washings of great piles of what formerly was considered refuse, from which certain small sizes of now merchantable coal are obtained."

But notwithstanding the facts thus vigorously stated, the learned judge denied the complainants the relief sought, upon the ground that the issues were not made by the bill, and the findings of the master were therefore irrelevant and foreign to the case before him, or in the judge's own words, "the conclusion is that, whilst it seems clearly established that all of the defendants, and those standing in their shoes as purchasers with notice of the pendency of the suit, have been unlawfully unloading the refuse of their workings into the Mill creek, regardless of the rights of and heedless of possible injury to sub-riparian owners and communities, none of these plaintiffs have, in this proceeding, put themselves in a situation to insist upon a decree prohibiting a continuance of these indefensible acts, or compelling an abatement of their results."

The case is thus practically narrowed to one of equity pleading. The bill is brief and couched in general terms, but the second paragraph sets forth that defendants are "not only filling up the channel or course of said stream, but are diverting it from its proper channel, impeding the proper flow of the stream, depositing large quantities of culm, muck and dirt in the bed and upon and over the legitimate banks of the said stream—filling up the drains and sewer channels leading into the said creek or river course, to the great damage and injury, not only to the property of the complainants, but as well to the health of the inhabitants of said borough."

Paragraph third further avers "that prior to the depositing of culm and dirt into the said streams by the defendants above named the creek bed in each of said streams was low enough to receive the drainage of the inhabitants of the said borough, and the flow and current of the creek swift enough to carry the same away, but by reason of the acts of the defendants above named, the condition of such creek or river channels is such that the drain mouths are blocked up—the drainage is dammed back into the cellars of the inhabitants, and great damage is done to the property of the complainants, and their

health, and the health of all the inhabitants of said borough, is seriously threatened thereby."

While these averments are general and not clearly defined, yet it cannot be fairly said that they do not contain and set forth the substance of the injury complained of. It is the right of the riparian owner to have the natural flow of the stream reach his land in its natural channel, and in its natural condition. An averment that the channel is filled up or diverted, its bed raised so as to obstruct its current, and prevent drainage into it, is an averment of unlawful interference with complainant's rights. The specific injury resulting therefrom should in good pleading be set forth with reasonable particularity, but this fault may be waived by failure to object to it in time, as will be noticed further on. And as to the averment of the deposit of culm, muck and dirt, the master found that defendants had "polluted" the stream, which is but another form of saying that they had deposited culm, muck and dirt in it, as the bill charged.

In regard to one of the complainants, Hemler, the court found that there was no evidence that he owned any property affected by the defendants' acts, and as this appears to be correct, the bill was properly dismissed as regards him.

As to Fricke it is said that "the master does not specify the manner in which (his) property is damaged," and that the evidence shows that it was from the flooding of the lot at high water, depositing upon its surface culm, muck, etc., destructive of vegetation, and from percolations into his cellar due to the elevation of the bed of the stream. Of these injuries it is said there is no allegation in the bill.

With regard to the borough of Port Carbon it is also said that while certain evidence in the case, such as the flooding of a street, the obstruction of certain culverts and of a street drain, etc., might be treated as proof of injury to the property of the borough, if covered by the averments of the bill, yet there is nothing in the language of the bill that gives notice of it as a fact intended to be proved or relied on, the objection being that there is no specific averment that the property injured belongs to the municipality.

The cause of action set up by the bill, though as already said couched in very general terms, certainly contains in sub-

stance averments of injuries of the very nature found by the master to have been done by the defendants to the complainants. It is true they are not averred with the precision required in good pleading, but there is no claim that the defendants were thereby misled, or failed to produce proof which would have led to different findings by the master on the essential facts of the case, or the law applicable to them. In truth the objections do not appear to have been raised by the defendants themselves in any of their exceptions to the master's report, but by the court on final hearing, after the case had been before the master for four years, and both parties had produced all their evidence and been fully heard on the merits. On the filing of the court's opinion a motion for leave to amend the bill so as meet the objections was promptly made. The substantial cause of action was not proposed to be changed, but the amendment was to specify and define what the bill had left general and indefinite. Leave to amend was refused. It should have been granted. The refusal was the enforcement of highly technical objections, in a case which had passed the stage in which they were applicable. But, though the amendment should have been allowed, it is not now necessary. The bill is sufficient in substance to sustain a decree at this time. This court does not intend to encourage loose or careless or inaccurate pleading, but technical objections that do not touch the merits of the case, nor subject either party to unfair burdens or unjust results, should be made promptly or be considered waived. In the strictest days of common-law pleading there were many faults that were cured by verdict, and equity should not be less liberal to faults which are merely of form, after a result has been reached on the merits.

The decree is reversed as to complainants Christian Fricke and the borough of Port Carbon, and injunction directed to be issued as recommended by the master. All costs to be paid by the appellees.