White *v.* Pennsylvania R. R. Company, Appellant.

Argued April 10, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused June 25, 1946.

*William M. Rosenfield,* for appellant.

*J. Roy Lilley,* with him *William P. Wilson* and *Lilley & Wilson,* for appellee.

OPINION BY MR. JUSTICE DREW, May 27, 1946:

William W. White, plaintiff, filed this bill in equity against Pennsylvania Railroad Company, defendant, to compel it to clean and keep clean a portion of South Creek, as relocated by it on its right-of-way in Bradford County, and for compensation for damage done to plaintiff's riparian lands allegedly caused by the waters of the creek being cast thereon through the negligence of defendant. The chancellor, after hearing, granted the prayer of the bill and awarded compensation to plaintiff in the sum of $10,687.50. Exceptions having been dismissed and the decree nisi having been made final, defendant appealed.

The chancellor found the following facts: .From the early part of 1929 to the present time, plaintiff has been the owner and in possession of a six hundred acre farm, forty acres of which are composed of very fertile muck lands lying between two high hills which run in a northerly and southerly direction. About one hundred years ago, defendant's predecessor in title built an elevated embankment, as a roadbed for its tracks, through this valley, immediately to the west and extending the entire length of the muck lands now owned by plaintiff. The embankment was constructed in the channel of South Creek, which flowed naturally northwardly along the valley immediately west of plaintiff's muck lands from Wolfe's Run (a stream running down the hillside from the west near the southerly boundary of plaintiff's property). At the same time, defendant's predecessor in title diverted South Creek into a substituted channel or ditch on the east side of its right-of-way, and constructed a five-foot culvert under its tracks to afford Wolfe's Run an outlet at right angle into South Creek as relocated. From the time the railroad was built to the early part of 1929, defendant and its predecessor maintained South Creek in a good and reasonable condition so that during all those years none of the waters of the creek flowed upon or seeped into plaintiff's muck lands and this prop-

erty was continuously used and cultivated for the growing of celery, onions, potatoes and other root crops. Since 1929 defendant has failed to keep the creek reasonably free from obstructions and at the proper depth and width, and as a result the waters of the creek have been forced upon and into nineteen acres of plaintiff's muck lands, rendering them untillable; except during 1938 when defendant partially cleaned out the creek bed which permitted these lands to be cultivated during the following year only.

As a general rule, a riparian owner has a right to an unobstructed flow of water in its natural channel. As to the construction of a new channel for a watercourse, it was said in *Taylor v. Canton Township,* 30 Pa. Superior Ct. 305, 313: "If a new course is made, different from that which nature has provided, and the discharge is thereby made to fall upon a different place and in a different manner, so as to cause damage to the owner of the servient tenement, the owner of the superior or dominant tenement would be liable." See also Farnham on Waters and Water Rights, Vol. II, §511. Defendant negligently maintained the channel into which South Creek was diverted, causing the stream to flow upon plaintiff's land, and that defendant is clearly liable in damages. In the adjudication, it is said: "There is no doubt in the mind of the chancellor, after considering all of the evidence in the case and the observations he made upon the grounds, that 'South Creek' ditch is, and for a long period of time has been, partially filled with materials, a portion of which, at least, came from the embankment of the defendant company's railroad, and as a result, the water, instead of flowing away as it would if the ditch were kept at its proper level and reasonably free from obstructions and fills, dams up and prevents its flowing, and causes it to stand stagnant, for a considerable distance both sides of the five foot iron pipe [culvert] where it at times stands to a depth of three feet, and that this water which

would flow away if the ditch were in proper condition, does seep through and upon the lands of the plaintiff rendering them unusable. The chancellor is convinced from the evidence in the case and his observations upon the ground, that had the railroad embankment and fill not been placed through these muck lands, the natural course of 'South Creek' would be approximately where the fill is located, and it is but reasonable that the defendant company having constructed its fill and embankment in what would be the natural bed of 'South Creek', and having constructed the 'South Creek' ditch on its right-of-way and along its embankment, to take care of the water of 'South Creek', it should be held to the responsibility of maintaining that ditch in a reasonable and proper condition to effectuate the purpose for which it was constructed; and if it were so maintained, as the evidence discloses it was for many years prior to 1929, plaintiff's muck lands involved in this case would undoubtedly be and remain in the condition they were during those years, and be highly valuable and productive of the crops nature especially fitted them to produce; and the chancellor is satisfied that defendant company has signally failed in discharging its duty in maintaining and keeping in reasonably proper condition the 'South Creek' ditch in question and as a result thereof plaintiff's lands have been rendered unusable over a period of years."

Following a proceeding instituted by several owners of muck lands to the south of those of plaintiff, such owners and plaintiff's predecessor in title agreed to and did divert the drainage of the lands of the owners to the south, which would have drained over plaintiff's property, by a ditch constructed westwardly to defendant's right-of-way and northwardly thereon to meet South Creek just south of the five-foot culvert built by defendant under its tracks to permit Wolfe's Run to empty into that creek. Defendant contends that plaintiff is barred from any recovery in the present controversy be-

cause of that diversion of drainage onto defendant's lands. With this contention we do not agree. That such diverted waters did not materially increase the capacity of South Creek or in any way contribute to the flooding of plaintiff's land is obvious, for there was no damage to plaintiff's property until 1929, (many years after this drainage diversion), and then only because defendant neglected to continue proper maintenance of the channel of South Creek. In this connection, the chancellor said: ". . . we are satisfied the defendant company consented, or at least acquiesced, in the construction and maintenance of said ditch, and that the plaintiff's predecessor in title was not a trespasser." Moreover, early in the period of plaintiff's ownership of the muck lands, defendant's superintendent warned him that the new drainage of South Creek set-up was entirely on the defendant's right-of-way and for plaintiff to attempt to clear the creek might endanger railroad traffic and that plaintiff would be trespassing. The record shows also that in 1938, when defendant partially cleaned out the creek, with plaintiff's consent it pushed the channel over on his land in order to obtain more room.

Defendant also argued that all damages which should have been determined at the acquisition of the property should now be considered as complete satisfaction of the present claim of plaintiff. There is no merit in this argument, for as said by the chancellor: "The railway right-of-way was taken nearly a century ago and there is no evidence in the case showing by what proceeding the right-of-way was acquired. Whether it was taken by condemnation, or, by contract between the railroad company and the owners of the land at the time. We believe the damages shown in the present case were not and could not be included or covered. Of course all damages caused to the owner of the land at the time which were caused by the reason of the land taken, or the inconveniences to the land by reason of the obstruction of view, ingress and egress to the present state highway

and the dividing of the muck lands by the embankments and similar damages were included and covered in the original taking. We are of opinion, however, that the present damages suffered by plaintiff which were caused by the defendant's negligence and wrongful use of the right-of-way acquired and in the maintenance of the same are not covered by the damages sustained at the original taking." Plaintiff could not possibly anticipate at the time of the taking that many years later the railroad would suddenly cease to continue to perform its legal duty to keep open its culvert and properly maintain the channel of the creek.

There is no merit in defendant's contention that it is not responsible for all of the accumulation of cinders, gravel, clay, mud, etc., which obstructs the flow of water in South Creek. Almost all of these elements which defendant claims are other factors contributing to the damage to plaintiff's muck lands have existed since 1914 and they were not sufficient in any way to create any flooding of the lands of plaintiff. The negligence of defendant in failing to keep the channel open, as it had done for many years, was the whole cause of the damage to plaintiff's land.

It is also contended by defendant that the amount of damages awarded by the chancellor is excessive, in that it is not supported by the evidence. With this we do not agree. There is ample testimony to support the chancellor's finding that the annual rental value per acre of the nineteen acres of muck lands which were rendered untillable from July 28, 1936, to January 27, 1945 (excepting the year 1939), was $75.00. On this basis the amount of the damages, as determined by the chancellor, is correct.

The findings of the chancellor, affirmed by the court en banc, are supported by substantial evidence or reasonable inferences deducible therefrom, for which reason we cannot disturb them on appeal: *T. F. Quinn Coal Co. v. Scranton Anthracite Coal Co.*, 350 Pa. 21, 38 A. 2d 77.

Decree affirmed.