505 A.2d 286

Phyllis J. FIEDLER, J. Earl and Bonnie McCaleb, Robert and Margaret L. Cryan, Patricia and Walter M. Fish and Ann and Jay H. Calvert, Jr., Appellees,

v.

Wayne and Jean COEN and Stephen and Janet Tiley, Appellants.

Superior Court of Pennsylvania.

Argued Sept. 10, 1985.

Filed Feb. 18, 1986.

Peter A. Mardinly, Media, for appellants.

Robert W. Lentz, Paoli, for appellees.

Before McEWEN, MONTEMURO and TAMILIA, JJ.

MONTEMURO, Judge:

On August 17, 1984, the Honorable Charles B. Smith of the Court of Common Pleas of Chester County dismissed appellant's exceptions to a Decree Nisi entered by Judge Smith on March 5, 1984 which had issued an injunction in favor of appellees. The order was made final and this appeal followed.

The instant litigation commenced with a complaint in equity filed by appellees, plaintiffs below, seeking to enjoin appellants [1] Wayne and Jean Coen from diverting or obstructing a certain watercourse on the Coen property and to maintain the watercourse so that water continued to reach appellees' properties. Appellees also prayed for "[s]uch

---

**1.** Stephen and Janet Tiley were permitted to intervene as additional defendants. *See* Pa.R.C.P. 2327. The order from which this appeal was taken does not mention the Tileys or their property.

other relief as the Court shall deem appropriate." After a hearing on the matter, and an on-site inspection by Judge Smith, the court entered the following decree nisi:

AND NOW, this 5th day of March, 1984, ... it is

ORDERED that Plaintiffs are granted a permanent injunction and Defendants, Wayne and Jean Coen, are Ordered and Directed to return permanently the flow of the stream on their property, to the man-made watercourse, which runs through the respective properties of Plaintiffs (the "man-made watercourse"). Within ten (10) days of the date of this Order, the Coens shall submit a plan setting forth the means they propose to use to return permanently the flow of water to the man-made watercourse to counsel for Plaintiffs for his approval. In the event said plan is approved by counsel for Plaintiffs, the Coens are Ordered and Directed to carry out said plan and have constructed within forty (40) days of the date of this Order, the device(s) for returning permanently the flow of water to the man-made watercourse. If said plan is not acceptable to counsel for Plaintiffs, or the flow of water is not returned permanently, to the man-made watercourse within forty (40) days of the date of this Order, pursuant to said approved plan, the Coens are Ordered and Directed to permit Plaintiffs, and/or their agents, independent contractors or employees, to enter upon the Coens' property to construct the device(s) as described by Albert J. Giannantonio, at the Hearing in this case, including the opening of the now enclosed flume. Upon certification to this Court, by counsel for Plaintiffs, of the expense of the installation of said device, a judgment in that amount shall be entered in favor of Plaintiffs and against Defendants.

Thereafter it shall be the responsibility of the Plaintiffs to maintain said device(s) to the extent necessary, once installed, so that the flow of water remains in the man-made watercourse. Plaintiffs shall have the right to enter onto Defendant's property for the purpose of in-

specting said device(s) and insuring that it is functioning properly.

Defendants are permanently enjoined from disrupting in any way the flow of water from the man-made watercourse.

\* \* \* \* \* \*

BY THE COURT:

Charles B. Smith, J.

This decree nisi was made final by an order dated August 17, 1984.

The appellants frame the issues before us as follows:

I. May a chancellor exercise subject matter jurisdiction where property owners affected by the requested relief have not been joined as parties?

II. To assert a prescriptive easement against a bona fide purchaser for value, must Plaintiffs allege and prove that the easement is open and apparent?

III. Did the chancellor err in refusing to deny Plaintiffs relief due to laches, or equitable estoppel?

IV. Did the chancellor err in compelling Defendants to reconstruct the man-made streambed?

Brief for Appellant at 3.

■ We have reviewed the arguments of the parties, the lower court's opinion, and the extensive record in this case and agree with the conclusions reached by the court below regarding issues II through IV. Finding that the court properly and adequately disposed of those issues, we see no need to add further comment. As to the first issue relating to jurisdiction, further discussion is in order.[2]

2. Although the court below did not address this claim at any length, it did, under the heading "CONCLUSIONS OF LAW", state: "This Court has jurisdiction over the parties and subject matter in this case." Slip op. at 7. The trial court apparently considered appellants' motion to dismiss due to failure to join indispensable parties to have been untimely. See N.T. December 1, 1983 at 43. However, as this objection goes to the court's jurisdiction, it may be raised at any time. *Dozor Agency, Inc. v. Rosenberg,* 403 Pa. 237, 169 A.2d 771 (1961); *see also* Pa.R.C.P. 1032.

Appellants contend that the appellees failed to join certain parties who are alleged to be indispensable to this litigation. This claim, if true, would mean the order appealed from is null and void, as such a claim goes to the court's very jurisdiction over the instant controversy. *Columbia Gas Transmission Corp. v. Diamond Fuel Co.*, 464 Pa. 377, 346 A.2d 788 (1975); *Hartley v. Langkamp*, 243 Pa. 550, 90 A. 402 (1914); *Barren v. Dubas*, 295 Pa.Super. 443, 441 A.2d 1315 (1982) (collecting cases). Appellants' contention is that appellees, who are downstream landowners, should have joined other downstream landowners whose riparian rights may be affected by the instant suit in equity.

"In Pennsylvania, an indispensable party is one whose rights are so directly affected by litigation that he must be a party of record to protect such rights, and his absence renders any order or decree of court null and void for want of jurisdiction." *Columbia Gas Transmission Corp. v. Diamond Fuel Co., supra*, 464 Pa. at 379, 346 A.2d at 789; *see generally* 14 STANDARD PENNSYLVANIA PRACTICE 2d §§ 79: 68–69; 5 GOODRICH AMRAM 2d § 1507:2.

Some of the parties claimed by appellants to be indispensable are landowners living downstream from appellants and upstream from appellees. These individuals own the land over which the watercourse flows as it makes its way from the Coens' (appellants') property to the appellees' properties (i.e., the Fiedler, McCaleb, Cryan, Fish and Calvert properties). As appellants state in their brief, after flowing off the Coens' property, "[t]he [watercourse] exits onto the Miller property, then to the Pension property and then flows over the Schless property" before reaching the property of the appellees [3]. As we understand appellant's argu-

---

**3.** The following diagram which shows the course of the watercourse was taken from Plaintiffs' Exhibit # 1. This exhibit was admitted without objection at trial. N.T. December 1, 1983, at 6.

ment, the simple fact that the stream flows over and through certain properties is sufficient to make the owners of those properties indispensable parties. We disagree.

As our supreme court noted in *Columbia Gas,* an indispensable party must be joined in a proceeding in order to protect his or her rights. *Columbia Gas Transmission Corp. v. Diamond Fuel Corp., supra.* However, in the instant proceeding, the parties alleged to have been indispensable have had their riparian rights protected, since the court properly found, as we confirmed above, that there was an existing watercourse flowing in a specific channel which was improperly obstructed or diverted by appellants (Coens). Thus, as to the intervening downstream riparian landowners,[4] their riparian rights entitle them to the continued flow of the existing watercourse in the same channel and in the general quality and quantity as the watercourse had been flowing. *Lucas v. Ford,* 363 Pa. 153, 69 A.2d 114 (1949); *White v. Penna. R.R. Co.,* 354 Pa. 397, 47 A.2d 200

4. The owners of the Miller, Pension and Schless properties.

(1946); *Fricke v. Quinn*, 188 Pa. 474, 41 A. 737 (1898); *Hoy v. Sterrett*, 2 Watts 327 (1834); *see generally* Gould on Waters § 204 (3rd ed.). These rights are the same as the appellees' in the watercourse. Hence, the appellees have in this litigation, not only preserved but also enforced the riparian rights of the intermediate downstream landowners who appellants deem indispensable.[5]

The remaining parties mentioned by appellants in their jurisdictional argument have no riparian rights vis-a-vis the watercourse because their properties are not touched by the stream. In the proceedings below, appellants attempted to establish that while the watercourse which flows to appellees' properties did indeed exist, there was also a natural or historical watercourse. Appellant argued that this natural watercourse was the only one in which any party had riparian rights. The trial court rejected this claim, finding the watercourse flowing to appellees' properties has existed since at least the turn of the century and that appellees had established their riparian rights in that stream. *See City of Reading v. Althouse*, 93 Pa. 400 (1880); *Appeal of Fleming*, 65 Pa. 444 (1870); *Beech v. Kuder*, 15 Pa.Super. 89 (1900). Our review of the record finds ample support for the trial court's findings and conclusions. These other allegedly indispensable parties live

---

5. Indeed, we are uncertain as to just what role these parties would play in this litigation, and appellants provide us with no real indication of how their presence would affect the outcome. As we stated, the lower court properly found that appellees established riparian rights in a certain, long-existing stream. These rights were interfered with by the Coens. The appellees, as downstream riparian landowners, had the right to enjoin this interference. The intermediate riparian landowners had no more right to obstruct the flow from appellees than appellants (the Coens) had. In addition, the allegedly indispensable parties also had the *obligation* to allow the water to flow off of the Coens' property. *See Hughesville Water Co. v. Person*, 182 Pa. 450, 38 A. 584 (1897); *Beech v. Kuder*, 15 Pa.Super. 89 (1900). Thus, as we are in agreement with the lower court that the water course in question was one in which appellees established riparian rights, and considering that these parties could not themselves obstruct the watercourse or refuse to allow the flow off of the Coen property, we cannot see why these parties are indispensable in this litigation.

along the course of the "natural or historical" watercourse which the lower court found has not been the channel through which the water in question flowed. As such, they have no riparian rights in the water flow, and can not therefore be said to have rights which may be affected by this litigation. We therefore do not find them to be indispensable.

Finding no reversible error, we will not disturb the trial court's order.[6]

Order affirmed.

---

**6.** We note that our supreme court approved of an order which granted substantially similar relief in *Scheetz Appeal,* 35 Pa. 88 (1860).