**T. W. GUTHRIE et al., Plaintiffs,**

v.

**ALABAMA BY–PRODUCTS COMPANY,**
**a corporation, et al., Defendants.**

**Civ. A. No. 71–21.**

United States District Court,
N. D. Alabama, S. D.

June 21, 1971.

Roscoe B. Hogan, Hogan & Smith, L. Drew Redden, Rogers, Howard, Redden & Mills, Charles E. Clark, Frank M. Bainbridge, Bainbridge & Mims, Birmingham, Ala., for plaintiffs.

William B. Moore, Jr., Rushton, Stokely, Johnston & Garrett, Montgomery, Ala., for Koppers Company, Inc.

E. M. Zeidman, Birmingham, Ala., for Alabama Oxygen Company.

Robert G. Tate, Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for Bessemer Galvanizing Works, U. S. Steel Corp., E. I. DuPont deNemours & Co., Republic Steel Corp.

L. Murray Alley, F. J. Gale, III, Cabaniss, Johnston, Gardner & Clark, Birmingham, Ala., for Woodward Corp., McWane Cast Iron Pipe Co., Alabama By-Products Co., Chicago Bridge & Iron Co., Hayes International Corp.

Charles H. Volz, Jr., Volz, Capouano, Wampold & Prestwood, Montgomery, Ala., for Birmingham Hide & Tallow Co.

John H. Morrow, Macbeth Wagnon, Jr., Bradley, Arant, Rose & White, Bir-

mingham, Ala., for Vulcan Materials Company, Swift Agricultural Chemicals Corp.; U. S. Pipe & Foundry Co.; Stockham Valves & Fittings, Inc.; Clow Corp.; Allied Chemical Corp.

W. B. Fernambucq, Huie, Fernambucq & Stewart, Birmingham, Ala., for Peabody Coal Co.

## MEMORANDUM OPINION

LYNNE, District Judge.

Plaintiffs, as lower riparian landowners, seek damages and injunctive relief for alleged water pollution.

This action was filed on behalf of some 65 named plaintiffs "and all others similarly situated." Plaintiffs allege that they are riparian landowners along the Warrior River, a navigable waterway, and some of its tributary creeks which run through the industrial valley of Birmingham. The defendants named in the original complaint are some 19 industrial corporations who, plaintiffs aver, discharge liquid wastes from their industrial plants into creeks emptying into the Warrior River. Plaintiffs allege that they own riparian lands downstream from the points where some or all of the defendants discharge such wastes; that they use these lands for both commercial and recreational purposes; and that the wastes discharged by defendants cause the waters of the Warrior River to be harmful and offensive to fish, wildlife, livestock and human beings, including the plaintiffs, and that as a consequence of this pollution the use, value and enjoyment of their riparian lands have been impaired.

In the original complaint, federal jurisdiction is posited exclusively upon 28 U.S.C.A. § 1331, the theory being that the defendants are discharging the wastes complained of in violation of Section 13 of the Rivers and Harbors Appropriation Act of 1899.[1] In addition, plaintiffs contend that the defendants are liable for the same acts on common law theories of negligence, trespass and nuisance.

Defendants filed motions to dismiss the original complaint advancing the ground, inter alia, that this court lacks jurisdiction over the subject matter of the action because the matter in controversy does not arise under the Constitution, laws or treaties of the United States within the meaning of 28 U.S.C.A. § 1331.

Plaintiffs thereafter filed three amendments to the complaint. The first such amendment alleges (a) diversity of citizenship between the plaintiffs and some, but not all, of the defendants, (b) that the State of Alabama has issued or provided for the issuance of permits to the defendants for their industrial waste discharges through the Alabama Water Improvement Commission, (c) that the complaint, as amended, raises a federal question under one of the Civil Rights Acts,[2] (d) that the complaint, as amended, raises a federal question under the 14th Amendment to the Constitution of the United States, and (e) class action allegations of the type sanctioned by Rule 23, F.R.Civ.P.

By two additional amendments, plaintiffs (a) strike two of the original plaintiffs and add fourteen new plaintiffs, (b) add three defendants, (c) assert jurisdiction under the 5th Amendment to the Constitution of the United States, (d) urge pendent jurisdiction of their nonfederal claims, and (e) divide their claim into six separate counts, asserting claims which may be summarized as based upon violations of 33 U.S.C.A. § 407, negligence, willful and wanton misconduct, nuisance and deprivation of property and the enjoyment thereof in violation of 42 U.S.C.A. § 1983, and of the 5th and 14th Amendments of the United States Constitution.

Defendants refiled motions to dismiss the complaint as amended again adverting to the lack of federal question jurisdiction and the lack of diversity jurisdiction, inter alia. The court has considered the extensive briefs from all parties and the thoroughly excellent oral

---

1. 33 U.S.C.A. § 407.

2. 42 U.S.C.A. § 1983.

arguments of counsel, and has concluded that this court does not have jurisdiction of the subject matter of this action.

### Diversity of Citizenship

■ The amended complaint discloses facially that some of the defendants are citizens of Alabama, as are the plaintiffs. A fundamental principle of federal diversity jurisdiction is that the diversity must be complete, so that all the plaintiffs are citizens of different states from all the defendants.[3] Plaintiffs' suggestion that the joinder of claims permitted by Rule 20, F.R.Civ.P., relieves the necessity of complete diversity will not do. There is no federal jurisdiction of this action based on diversity of citizenship. Moreover, since the lack of diversity is an actual defect, and not merely a formal one, it cannot be cured by a further amendment.[4]

### Civil Rights Act and U. S. Constitution

■ 42 U.S.C.A. § 1983 gives a right of action to redress certain deprivations, under color of state law, of " * * * rights, privileges, or immunities secured by the Constitution and laws * * * " of the United States. However, this civil rights statute is intended for the protection of personal liberties rather than for the protection of property rights.[5]

■ In this action plaintiffs sue as riparian landowners. All of the injuries complained of relate to plaintiffs' interests in real property. These are not the kinds of interests protected by 42 U.S.C.A. § 1983.

■ Another element that is essential to a claim under 42 U.S.C.A. § 1983 is that the action complained of be "under color" of state law. It is likewise necessary, in order to invoke the protection of the 14th Amendment, that there be "state action."[6] The only state action, or action under color of state law, alleged in the amended complaint, is that Alabama has created an agency known as the Water Improvement Commission and conferred upon it power to issue permits for the discharge of industrial liquid wastes and that some of the defendants are discharging the wastes complained of pursuant to such permits. Alabama's issuance of a permit for industrial waste discharges, even though the issuing agency has power to regulate or prohibit the discharges, is not the kind of state action which makes such discharges subject to the limitations of the 14th Amendment; nor does the fact that the defendants, or some of them, obtained such permits convert their discharges of industrial waste into action under color of state law within the ambit of the civil rights acts.[7]

■ The 5th Amendment to the Constitution of the United States applies to action of the federal government. Plaintiffs do not allege a federal permit or any other basis for attributing responsibility for the industrial waste discharges complained of to the federal government.

Accordingly, the amended complaint does not present a controversy which arises under 42 U.S.C.A. § 1983, or under the 5th or 14th Amendment to the United States Constitution.

3. See, e. g. Strawbridge v. Curtiss, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806).

4. Russell v. Basila Manufacturing Co., 246 F.2d 432 (5th Cir. 1957).

5. Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (Justice Stone's opinion); Garren v. City of Winston-Salem, 439 F.2d 140 (4th Cir. 1971); National Land and Inv. Co. v. Specter, 428 F.2d 91 (3rd Cir. 1970); Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969); Bradford Audio Corp. v. Pious, 392 F.2d 67 (2d Cir. 1968).

6. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

7. Environmental Defense Fund v. Hoerner Waldorf, 1 Environment Reporter Cases 1640 (D.Mont. Aug. 27, 1970); Bright v. Isenbarger, 314 F.Supp. 1382 (N.D.Ind. 1970); Weyandt v. Mason's Stores, Inc., 279 F.Supp. 283 (W.D.Pa.1968); Grossner v. Trustees of Columbia University, 287 F.Supp. 535 (S.D.N.Y.1968); Pugliano v. Staziak, 231 F.Supp. 347, 351 (W.D.Pa.1964) aff'd 345 F.2d 797 (3d Cir. 1965); Wood v. Hogan, 215 F.Supp. 53 (W.D.Va.1963); Smith v. Jennings, 148 F.Supp. 641 (W.D.Mich.1957).

### The Rivers and Harbors Appropriation Act of 1899

Plaintiffs have urged with great emphasis that there is federal question jurisdiction on the ground that the amended complaint presents a controversy arising under Section 13 of the Rivers and Harbors Appropriation Act of 1899.[8] Plaintiffs allege that the defendants' discharges are "refuse" within the meaning of 33 U.S.C.A. § 407, and that the defendants "* * * on divers dates continuing up until the date of filing this claim deposited refuse into tributaries of navigable waters from which said refuse floats into navigable waters without first obtaining permits from proper United States authorities for the discharge of said refuse materials into said tributaries or navigable waters all in violation of Title 33, U.S.C.A. Sec. 407."

■ Assuming, arguendo, that the amended complaint charges violations of 33 U.S.C.A. § 407, it does not follow that plaintiffs' claim of injuries resulting from conduct which violates 33 U.S.C.A. § 407 "arises under" that statute in a sense that confers federal court jurisdiction of this action under 28 U.S.C.A. § 1331. The test of whether a claim "arises under" the laws of the United States is not a precise one. It is clear, however, that something more than mere reference to a federal statute is required. Perhaps the most frequently quoted statement of basic guiding principles can be found in Justice Cardozo's opinion in Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936).

> How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element and an essential one, of the plaintiff's cause

of action * * * The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect and defeated if they receive another * * * (citations omitted). 299 U.S. at 112–113, 57 S. Ct. at 97.

In Shulthis v. McDougal, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205 (1912), the Court stated:

> A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends. 225 U.S. at 569, 32 S.Ct. at 706.

In Johnston v. Byrd, 354 F.2d 982 (5th Cir. 1965), a case involving a controversy regarding title to personal property within Alabama, the Court stated:

> State law determines that question, not federal law. A question of federal law is often "lurking in the background" of every case. In order to invoke the jurisdiction of a federal court there must be "a substantial claim founded 'directly' upon federal law." 354 F.2d at 984

With these principles in mind, it is necessary to examine the basis of plaintiffs' right of action and the effect thereon, if any, of 33 U.S.C.A. § 407.

First, it is clear that the plaintiffs' right to relief does not depend exclusively upon the existence of 33 U.S.C.A. § 407, or upon whether the defendants are violating that statute. The law of Alabama recognizes a right of action for past damages, as well as a right to injunctive relief to prevent future damages, for impairment of the value and enjoyment of riparian lands resulting from water pollution.[9] Plaintiffs con-

---

8. 33 U.S.C.A. § 407.

9. See, e. g., Montgomery Limestone Co. v. Bearden, 256 Ala. 269, 54 So.2d 571 (1951), and Tutwiler Coal, Coke & Iron Co. v. Nichols, 146 Ala. 364, 39 So. 762 (1905).

tend, however, that 33 U.S.C.A. § 407 grants a federally created cause of action for the same injury and entitles plaintiffs to the same relief as that available under the state common law causes of action. Plaintiffs concede that neither 33 U.S.C.A. § 407 nor any other part of the Rivers and Harbors Act expressly provides for a private civil remedy. Rather, they rely on the principle that a civil remedy for violation of a penal statute may be implied in favor of persons in the class for whose special benefit the statute was enacted. The court recognizes this as a sound principle of law, but its applicability depends upon whether the plaintiffs are within the class of persons for whose special benefit the statute was enacted and the statutory enactment was for the purpose of protecting against the type of harm or injury which has in fact occurred.[10]

■ A careful review of the Rivers and Harbors Appropriation Act of 1899, its legislative history, its administrative interpretation and its judicial gloss has convinced this court that 33 U.S.C.A. § 407 was not enacted for the purpose or with the effect of creating a federal cause of action to protect riparian landowners from the kinds of water pollution that have traditionally been dealt with under the law of nuisance.

The Act of 1899 included provisions regulating all kinds of construction in navigable waters,[11] providing for establishment of harbor lines and prohibiting encroachments,[12] regulating the creation and providing for removal of all kinds of obstructions in navigable waters,[13] regulating deposits of refuse in and adjacent to navigable waters,[14] and prohibiting injuries to river and harbor improvements.[15] Provisions were also made for enforcement of the act by

criminal penalties.[16] It is clear that these provisions were part of the efforts by Congress to maintain the nation's navigable waterways, as routes of commerce, free from obstructions.

A similar view was expresed by the Supreme Court in a recent opinion involving this legislation, as follows:

> Article 1, § 8 of the Constitution grants to Congress the power to regulate commerce. For the exercise of this power the navigable waters of the United States are to be deemed the "public property of the nation and subject to all the requisite legislation by Congress." * * * the federal government is charged with ensuring that navigable waterways, like any other routes of commerce over which it has assumed control, remain free of obstruction. * * * the Rivers and Harbors Act of 1899, an assertion of the sovereign power of the United States, * * * was obviously intended to prevent obstructions in the nation's waterways. Despite some difficulties with the wording of the Act, we have consistently found its coverage to be broad. * * * and we have found that a principal beneficiary of the Act, if not the principal beneficiary, is the Government itself. (citations omitted). Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967).

■ This court concludes that the purposes and extent of the Rivers and Harbors Act was to assist the federal government in insuring that our navigable waterways remain free of obstruction and to protect the special interest in freedom from such obstructions of those who use the nation's waterways for purposes of navigation. Numerous judicial decisions have held that violation of the penal provisions of the 1899 Act with

---

10. See Texas & Pacific R. Co. v. Rigsby, 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed. 874 (1916); Fitzgerald v. Pan American World Airways, 229 F.2d 499, 501 (2d Cir. 1956); Kardon v. National Gypsum Co., 69 F.Supp. 512, 513 (E.D.Pa.1946).

11. 33 U.S.C.A. §§ 401, 406.

12. 33 U.S.C.A. § 404.

13. 33 U.S.C.A. §§ 403, 409, 414–415.

14. 33 U.S.C.A. § 407.

15. 33 U.S.C.A. § 408.

16. 33 U.S.C.A. §§ 411–413.

resultant injury to rights of navigation or anchorage can be the basis of a federal right of action, either within general admiralty jurisdiction or as an implied federal cause of action.[17]

On the other hand, no court has recognized a federally created right of action under the 1899 Act where the interest to be protected is unrelated to rights of navigation or anchorage. The few decisions considering the matter have consistently denied that such a federally-created right of action exists.[18]

Plaintiffs rely heavily upon Alameda Conservation Association v. California, 437 F.2d 1087 (9th Cir. 1971). This decision is not regarded as persuasive on the issue before this court because in *Alameda* several alternate bases of federal jurisdiction were alleged and the only question discussed in the opinion was that of the plaintiffs' standing to sue. Since plaintiffs in the present case are complaining of injury to their private property, they clearly have standing to sue for such injury. Moreover, in *Alameda* the involvement of various sections of the Rivers and Harbors Act was on account of the filling or obstruction of large portions of San Francisco Bay. Such activity is clearly within the federally protected sphere of navigation and anchorage.

■ It is the court's opinion that the foregoing conclusion with respect to purposes and intent of the Rivers and Harbors Appropriation Act of 1899 is sound and fully supported by the legislative and administrative history of the Act. Section 407, like the other sections of the Rivers and Harbors Act, was enacted for the purpose of protecting navigation and anchorage and not as a general pollution control statute or to create a private right unrelated to navigation or anchorage. The Rivers and Harbors Appropriation Act of 1899 was adopted following a report to Congress by the Secretary of War which, at the prior direction of Congress, contained a compilation of existing laws relating to navigable water.[19] Section 13 (33 U.S.C.A. § 407) was derived from two pre-existing statutes: an 1890 Act which made it unlawful to empty into navigable waters " * * * any ballast, stone, slate, gravel, earth, rubbish, wreck, filth, slabs, edgings, sawdust, slag, cinders, ashes, refuse, or other waste of any kind * * * *which shall tend to impede or obstruct navigation* * * * *"* [20] 26 Stat. 453) and an 1894 Act which prohibited deposits in harbors and rivers for which Congress had appropriated money for improvements, of " * * * ballast, refuse, dirt, ashes, cinders, mud, sand, dredgings, sludge, acid, or any other matter of any kind other than that flowing from streets, sewers, and passing therefrom in a liquid state." [21] See United States v. Standard Oil Co., 384 U.S. 224, at 227–288, 86 S.Ct. 1427, at 16 L.Ed.2d 492 (1966).

Although the Act of 1894 did not contain a concluding phrase like that in the Act of 1890, the legislative history of the 1894 Act makes it clear that its purpose was to prohibit the discharge of materials which were reducing channel depths and making necessary expensive

**17.** See Acme Boat Rentals v. J. Ray McDermott & Co., 424 F.2d 393 (5th Cir. 1970); Tatum v. Blackstock, 319 F.2d 397 (5th Cir. 1963); Neches Canal Co. v. Miller & Vidor Lumber Co., 24 F.2d 763 (5th Cir. 1928); Converse v. Portsmouth Cotton Oil Ref. Co., 281 F. 981 (4th Cir. 1922); American Zinc Co. v. Foster, 313 F.Supp. 671 (S.D.Miss.1970); Lauritzen v. Chesapeake Bay Bridge & Tunnel District, 259 F.Supp. 633 (E.D.Va.1966); Gulf Atlantic Transportation Co. v. Becker County Sand & Gravel, 122 F.Supp. 13 (E.D.N.C.1954); Maier v. Publicker Commercial Alcohol Co., 62 F.Supp. 161 (E.D.

Pa.1945); Chatfield v. City of New Haven, 110 F. 788 (D.Conn.1901).

**18.** See, e. g., H. Christiansen & Sons, Inc. v. City of Duluth, 154 F.2d 205 (8th Cir. 1946) and Chambers-Liberty Counties Nav. Dist. v. Parker Bros & Co., 263 F. Supp. 602 (S.D.Tex.1967).

**19.** See United States v. Republic Steel Corp., 362 U.S. 482, 486, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960).

**20.** 26 Stat. 453.

**21.** 28 Stat. 363; 33 U.S.C.A. § 407 at p. 101 (1970).

dredging. See 26 Cong. Record 4376—(House, May 3, 1894). Moreover, the 1894 Act was construed by the Attorney General of the United States in 1896 as being subject to the same limitation. A group of mine operators applied to the Secretary of War for designation of an area where they could dump ore washings without violating the 1894 Act. The Secretary determined that discharge of the ore washings would *not* affect navigability of the river. However, because of opposition by parties contending that the discharge " * * * destroys the fish, pollutes the water so as to destroy its usefulness for domestic purposes, and injures scenery along the stream * * *," the Secretary asked the Attorney General whether he was required to act on the application and whether he should consider matters other than the effects on navigation. The Attorney General replied:

I am of the opinion that it is your duty to act upon the application. If you should decline to act in this and similar cases the above section would operate as an absolute prohibition. This was not the intention of Congress. * * * You should, therefore, be governed only by considerations affecting the navigation of the rivers. 21 Op.Atty.Gen. 305, 307–308 (1896)

With this Attorney General's opinion forming a part of the background, the House Conferees said of the compilation which became the Act of 1899 that it contained " * * * no essential changes in existing laws." 32 Cong. Record 2923 (House). The fact that the Act of 1899 made no substantive change in the pre-existing statutes has been recognized by the Supreme Court. United States v. Republic Steel Corp., 362 U.S. at p. 486 n. 4, 80 S.Ct. 884; United States v. Standard Oil Co., 384 U.S. at p. 228, 86 S.Ct. 1427. Certainly a provision intended to create a federal cause of action in favor of riparian landowners for impairment of the value and enjoyment of their riparian lands unrelated to impairment of rights of navigation would have been a major substantive addition to the pre-existing statutes.

The Congressional debates on the Rivers and Harbors Appropriation Act are consistent with this construction and include assurances by one of its supporters that it would " * * * simply revise and make clearer and more definite laws that have already been enacted * * *" and that it was " * * * better adapted to serve the interests of *commerce and navigation* than the laws in their present form." 32 Cong. Record 2297 (Senate, Feb. 24, 1899). No reported case of which this Court is aware, during the more than three-quarters of a century since its original enactment, has held that Section 407 created any private right unrelated to the special federal interest in protecting navigation.

 The statute by its very wording makes any other construction most improbable. It prohibits all discharge of refuse regardless of quantity or quality, but then authorizes the appropriate federal official to permit the discharge of all such refuse regardless of quantity or quality "whenever in the judgment of the Chief of Engineers anchorage and navigation will not be injured thereby." Any right or injury, unrelated to interference with rights of navigation, is outside the special federal interest and protection covered by the Rivers and Harbors Act.

Not only is this important in determining the legislative intent, but it also points up that Section 407, if related at all to plaintiffs' action, is merely tangential. The damages plaintiffs claim to have suffered result from the material alleged to have been discharged into the streams and not from any failure to have permits for their discharge. Plaintiffs' injuries would be no less, if the same discharge were made with federal permits after determination that such discharges would not injure anchorage or navigation. The fact that the same material is discharged without a permit adds nothing to plaintiffs' injury or right of action.

 The long-standing administrative construction of 33 U.S.C.A. § 407, while not conclusive as to the proper construction, is entitled to "great weight" in

construing the Act.[22] As recently as 1968, the Code of Federal Regulations included the following provision as part of the Corps of Engineers' regulations on depositing refuse in navigable waters:

Section 13 of the River and Harbor Act of March 3, 1899 (30 Stat. 1152; 33 U.S.C. 407), prohibits the deposit in navigable waters generally of 'refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state. *The jurisdiction of the Department of the Army, derived from the Federal laws enacted for the protection and preservation of the navigable waters of the United States, is limited and directed to such control as may be necessary to protect the public right of navigation.* Action under section 13 has therefore been directed by the Department principally against the discharge of those materials that are obstructive or injurious to navigation. 33 C.F.R. § 209.395 (1968).

All of this leads the Court to conclude that although Section 407 may create a federally protected right against deposit of refuse which injures navigation or anchorage, the injury of other private rights, even from deposits in violation of Section 407, does not give rise to a federal right of action nor does it supply a basis of federal jurisdiction in this case.

This conclusion highlights the analogy between 33 U.S.C.A. § 407 and the Safety Appliance Acts.[23] Violation of those acts resulting in injury to railroad employees, the special class sought to be protected, is the basis of a federally created cause of action under the Federal Employers' Liability Act.[24] However, there is no such federal cause of action in favor of persons other than railroad employees who may be injured as the result of conduct which violates these same federal statutes. For example, in cases growing out of railroad crossing collisions, and other accidents not involving railroad employees, one of the recognized grounds of negligence in a state common law cause of action is defendant's violation of the Federal Safety Appliance Acts. Such violations have been advanced as a basis for federal court jurisdiction on the theory that, because such a violation is alleged to have proximately caused the injury sued for, the action arises under a federal statute. However, it is uniformly held that there is no federal jurisdiction of such actions under 28 U.S.C.A. § 1331.[25]

This court is not unmindful of the increasing interest and concern at all levels of government with environmental and ecological problems. All agencies of the federal government are now required under legislation such as the National Environmental Policy Act of 1969[26] and the Fish and Wildlife Coordination Act[27] to take into consideration the ecological and environmental impact of any of its actions. Recent establishment of a federal permit program under 33 U.S.C.A. § 407 based on general environmental criteria apparently has its foundation in the policies and requirements of such recent legislation. This is made clear by the reasoning and holding of the Court in Zabel v. Tabb, 430 F.2d 199 (5th Cir. 1970). However, there is nothing in such legislation to suggest that Section 407 was intended to create a private right of action for the kind of injuries these plaintiffs claim to have sustained. In addition, the court is informed that both Houses of Congress now have before

22. United States v. Republic Steel Corp., 362 U.S. 482, 491, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960).

23. 45 U.S.C.A. § 1 et seq.

24. 45 U.S.C.A. § 51 et seq.

25. Crane v. Cedar Rapids & I. C. R. Co., 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969); Jacobson v. N. Y., N. H. &

H. R. Co., 206 F.2d 153 (1st Cir. 1953) aff'd 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067 (1959); Andersen v. Bingham & G. Ry. Co., 169 F.2d 328 (10th Cir. 1948); Owens v. N. Y. C. R. Co., 267 F.Supp. 252 (E.D.Ill.1967); Boncek v. Penn R. Co., 105 F.Supp. 700 (D.N.J.1952).

26. 42 U.S.C.A. §§ 4331–4347.

27. 16 U.S.C.A. §§ 661, 662.

them a number of versions of a bill introduced by Senators Hart and McGovern (S. 1032) allowing any person to bring suit in the federal courts against either federal agencies or private defendants to challenge conduct alleged unreasonably to result in environmental pollution. Though this circumstance may be only faintly persuasive, it does indicate that the sponsors of these bills believe that the right to maintain such suits in federal court is not provided by existing legislation. This court is firmly of the opinion that if plaintiffs are to be allowed to bring private damage suits for injuries traditionally local in nature and already covered by local statutory and common law, additional federal legislation is imperative. Such authority cannot be found in the existing law.

Convinced for the reasons above set forth that this court lacks jurisdiction of this action, it is unnecessary and would be inappropriate to consider the other issues raised by defendants' motions to dismiss. An order will be entered dismissing the action for lack of federal jurisdiction.