Albert C. STAHELI, Plaintiff,

v.

UNIVERSITY OF MISSISSIPPI, a Four Year State Supported Institution of Higher Learning of the State of Mississippi; Porter Fortune, Professor Emeritus and Former Chancellor of the University of Mississippi, in His Official and Individual Capacities; Peter Wagner, Academic Vice Chancellor of the University of Mississippi, in His Official and Individual Capacities; Joseph Sam, Graduate School Dean and Vice Chancellor for Research of the University of Mississippi, in His Official and Individual Capacities; Allie Smith, Dean of the School of Engineering of the University of Mississippi, in His Official and Individual Capacities; George Brunton, Chairman of the Department of Geology and Geological Engineering of the University of Mississippi, in His Official and Individual Capacities; William R. Reynolds, Tenured Member of the Department of Geology and Geological Engineering, in His Official and Individual Capacities; and Gerald Turner, Chancellor of the University of Mississippi, in His Official Capacity, Defendants.

No. WC84–94–NB–D.

United States District Court,
N.D. Mississippi, W.D.

Nov. 4, 1985.

---

**450**

David G. Hill, Oxford, Miss., for plaintiff.

Ed Davis Noble, Jr., Jackson, Miss., John H. Dunbar, Oxford, Miss., Mary Ann Connell, University of Miss., University, Miss., for defendants.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause came before the court on two motions for summary judgment filed on behalf of all defendants in this case. The defendants herein are the University of Mississippi (hereinafter the "University"), Gerald Turner, present Chancellor of the University who is sued in his official capacity, and Porter Fortune, Harvey Lewis, Peter Wagner, Joseph Sam, Allie Smith, George Brunton, and William Reynolds, high-echelon present and former employees of the University who are sued in both their official and their individual capacities. For convenience, all above-named defendants except the University and Gerald Turner are collectively referred to as the "individual defendants." After careful consideration of the thoroughly-researched and well-written briefs of all the parties, the court is now in a position to rule on these motions.

This case, involving an alleged wrongful denial of tenure at the University, requires a brief synopsis of the official tenure procedure set forth in the University publication entitled *A Handbook for Faculty and Staff.* Faculty members become eligible for tenure review each fall after satisfactory completion of a five-year probationary period. An employee may be considered only twice for tenure. Eligible candidates are notified at least one week before departmental tenure review meetings and may submit dossiers for consideration. Thereafter, the tenured department members review each candidate and cast advisory votes. After consideration of the advisory votes, the department chairperson gives an independent recommendation to the dean of the school or college. If the department chairperson advises against tenure, the application stops, subject to appeal procedures hereinafter described. However, if the department chairperson gives a favorable recommendation, the candidate's application and portfolio goes through four advisory reviews. Following these reviews, the application, portfolio, and advisory comments are sent to the Chancellor of the University, who determines in his discretion whether a particular candidate merits tenure. If the Chancellor approves the application, he notifies the candidate by letter.[1] However, if tenure is not granted, the Chancellor informs the department chairperson through a memorandum which sets forth the reasons for the unfavorable decision. The department chairperson then notifies the unsuccessful candidate, who may obtain a copy of the memorandum.

Upon either unfavorable recommendation by the department chairperson or disapproval by the Chancellor, the candidate may appeal to the Tenure Committee. This committee, composed of the Senate of the Faculty, reviews the decision and submits an advisory recommendation to the Chancellor. Thereafter, the Chancellor in his discretion takes whatever action he deems appropriate.

In the present case, the plaintiff became a candidate for tenure with the University Department of Geology and Geological Engineering in October, 1982. Although the acting department chairperson recommended tenure, all review personnel advised to the contrary. The adverse recommendations purportedly were premised on the plaintiff's lack of national publication,[2] his perceived inability to teach upper-level courses, and his active recruitment of un-

---

1. The University publication *A Handbook for Faculty and Staff* provides that tenure is conferred only through written communication from the Chancellor after a candidate satisfactorily completes a five-year probationary period and complies with all handbook tenure procedures.

2. The plaintiff contends that his presentation of papers at national and regional conferences either constituted national publication or was in lieu thereof. The court is not reviewing the correctness of the tenure decision and thus need not resolve this issue. *See Megill v. Board of Regents,* 541 F.2d 1073, 1077 (5th Cir.1976)

qualified persons as department majors.[3] When the application and advisory comments reached the Chancellor, he cited the plaintiff's lack of national publication and denied tenure. The plaintiff appealed to the Tenure Committee, which overwhelmingly advised that tenure be granted. Despite this recommendation, the Chancellor did not change his decision.

In accordance with University tenure policy, the plaintiff was invited the following fall to submit additional materials or publications for tenure evaluation. The plaintiff offered no further materials, the department committee voted against tenure, and the department chairperson did not make a favorable recommendation. Although the plaintiff was entitled to appeal this determination, he apparently took no further action. Nevertheless, the Faculty Senate on its own accord resolved that tenure should be granted. The Chancellor took no action on this resolution; furthermore, the plaintiff was not offered a teaching position after the 1984–85 academic year.

The plaintiff asserts three interrelated causes of action. First, the plaintiff contends that all defendants except Gerald Turner[4] violated his due process rights as secured by the fifth amendment, the fourteenth amendment, and 42 U.S.C. § 1983 (1981), and proximately caused loss of employment income, loss of professional reputation, emotional distress, and physical illness. Secondly, the plaintiff alleges that the individual defendants conspired in both their official and individual capacities to deny him tenure, increased compensation, and summer employment, thereby violating his due process rights under the fifth amendment, the fourteenth amendment, and 42 U.S.C. § 1983, as well as his first amendment rights to free speech and association. Finally, the plaintiff propounds a pendent state claim that the individual de-

fendants acting in their individual capacities violated his rights under the laws of the State of Mississippi. The plaintiff seeks declaratory relief, compensatory and punitive damages with interest from the individual defendants, an injunction requiring the University and Gerald Turner as Chancellor to grant full tenure to the plaintiff retroactive to the first tenure denial, court costs, and reasonable attorney fees.

## 1. Due Process Claims

### (a) Property Interest

■ The plaintiff contends that he was deprived of a property interest, the "expectancy of tenure," without due process in violation of the fifth and fourteenth amendments and of 42 U.S.C. § 1983. The fifth amendment restricts only actions by the federal government, *see, e.g., Rutherford v. United States*, 702 F.2d 580, 582 n. 4 (5th Cir.1983) (application of fifth amendment limited to federal action); *Guthrie v. Alabama By-Products Co.*, 328 F.Supp. 1140, 1143 (N.D.Ala.1971) (same), *aff'd.*, 456 F.2d 1294 (5th Cir.), *cert. denied*, 410 U.S. 946, 93 S.Ct. 1352, 35 L.Ed.2d 613 (1973), and a claim under this amendment is improper in this case since no federal action is alleged. However, the claims under both the fourteenth amendment and section 1983 for deprivation by the state of a property interest remain for consideration, *see, e.g., Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972) (fourteenth amendment cause of action for deprivation of property interest); *Vail v. Board of Education of Paris Union School District No. 95*, 706 F.2d 1435, 1436 (7th Cir.1983) (section 1983 cause of action for deprivation of property interest), *aff'd. per curiam by divided court*, 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984).

(court not reviewing body of tenure decisions of Board of Regents).

**3.** The plaintiff's efforts undisputedly contributed to a sharp increase in geology majors, which in turn probably enabled the University to obtain primary responsibility in the state for education of this field. However, reviewing personnel asserted that many University geology majors were insufficiently qualified.

**4.** At the time of the alleged violations, present Chancellor Gerald Turner had no connection with the University.

In order to prevail under either the fourteenth amendment or section 1983, the plaintiff must possess a property interest under the law of the state. *See, e.g., Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561 (existence of property interest a question of state law). Undoubtedly, an expectancy of tenure constitutes a protected property interest in some cases, *see, e.g., Lucas v. Chapman*, 430 F.2d 945, 947 (5th Cir.1970); *Ferguson v. Thomas*, 430 F.2d 852, 856 (5th Cir.1970); for example, when an employee's expectations are not unilateral, but are based on statute, contract, or a mutually explicit understanding. *See Board of Regents v. Roth*, 408 U.S. at 578, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.[5] Furthermore, the existence of an expectancy of tenure may be resolved in some cases as a matter of law, *see, e.g., Wells v. Doland*, 711 F.2d 670, 675 (5th Cir.1983) (affirmance of summary determination of no expectancy of tenure at McNeese State University in Louisiana; no evidence indicated tenure recommendation tantamount to tenure grant); *Montgomery v. Boshears*, 698 F.2d 739, 742 (5th Cir.1983) (same at University of Southern Mississippi; tenure procedures followed and no evidence of de facto tenure presented).

█ In the present case, the plaintiff was recommended by his department chairperson for tenure; however, all four reviewers advised against such a grant. The plaintiff has produced no evidence demonstrating that the Chancellor routinely bestows tenure over unanimous advisory disapprovals. Furthermore, although the Tenure Committee subsequently recommended tenure, no evidence was presented regarding the usual effect of such a recommendation, especially in conjunction with unanimous disapproval by reviewing personnel. Thus, the plaintiff in effect argues that mere recommendation for tenure by his department chairperson creates an expectancy of tenure constituting a property interest protected by due process considerations. *Cf. Wells v. Doland*, 711 F.2d at 675 (affirmance of summary determination of no expectancy of tenure absent evidence that tenure recommendation constitutes tenure grant). In view of the specific provisions of the University tenure policy, and in the absence of evidence of a mutually explicit understanding between the plaintiff and the University of a right to tenure,[6] this court determines that the plaintiff had no property interest; accordingly, the court need not review the adequacy of the plaintiff's appellate procedures. *Cf. id.* (no constitutional right to hearing for nontenured professor absent protected property or liberty interest).

The defendants' motions for summary judgment on this ground are well taken and will be granted.

### (b) Liberty Interest

█ The plaintiff asserts deprivation of a liberty interest due to alleged defamatory charges by the defendants. Among the requirements for this cause of action, the plaintiff must demonstrate that "the governmental agency has made or is likely to make the ... stigmatizing charges public

---

**5.** No Mississippi statute creates a sufficient basis for an expectancy of tenure. Furthermore, the tenure policies of Mississippi's state-supported universities, which undisputedly are relatively uniform, probably do not cause such an expectancy. *See Montgomery v. Boshears*, 698 F.2d 739, 742 (5th Cir.1983) (no expectancy of tenure at University of Southern Mississippi on facts); *Wood v. University of Southern Mississippi*, 539 F.2d 529, 531–32 (5th Cir.1976) (same).

**6.** A clear oral promise of employment may create an expectancy of tenure constituting a property interest. *See, e.g., Vail v. Board of Education of Paris Union School District No. 95*, 706 F.2d 1435, 1437 (7th Cir.1983) (existence of

property interest when superintendent, at direction of hiring authority, orally assured employee of future employment contract extension), *aff'd. per curiam by divided court*, 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984). In the present case, the plaintiff allegedly was assured by his department chairman that he was meeting tenure requirements. However, the plaintiff does not assert that such representations were at the Chancellor's direction. Inasmuch as University policy provides that only the Chancellor can grant tenure, such an unauthorized representation as a matter of law could not create a mutually explicit understanding of entitlement to tenure.

'in any official or intentional manner, other than in connection with the defense of a [related legal] action.'" *Wells v. Hico Independent School District*, 736 F.2d 243, 256 (5th Cir.1984), *quoting Ortwein v. Mackey*, 511 F.2d 696, 699 (5th Cir.1975). Inasmuch as plaintiff concedes lack of evidence that any defendants publicly stigmatized the plaintiff, the defendants' motions for summary judgment on this issue are well taken and will be granted.

## 2. Conspiracy Claims

The plaintiff advances conspiracy claims under 42 U.S.C. § 1983 and the fifth and fourteenth amendments against the individual defendants in both their official and individual capacities, asserting that he was denied tenure, summer employment, and increased compensation in a wrongful concerted effort to keep the Mining and Mineral Resources Institute (MMRI) program at the University at his expense. As previously discussed, the fifth amendment claim is improper due to lack of federal action; thus, this court need consider only the conspiracy claim as it relates to the fourteenth amendment and to section 1983.

30 U.S.C. §§ 1221–1230 (1984) delineates federal involvement in MMRI programs. Generally, 30 U.S.C. § 1221 (1984) authorizes a grant of federal funds to one eligible college in each participating state. 30 U.S.C. § 1230(a) (1984) establishes eligibility requirements with respect to type and quality of educational programs.[7] 30 C.F.R. § 890.6(c) (1984), in interpreting these requirements, provides that a school must employ "at least four full-time permanent faculty members ... conducting instruction and research in mining and mineral extraction." *Id.* The plaintiff contends that the University's MMRI program was jeopardized due both to accreditation problems[8] and to lack of four professors possessing expertise in "mining and mineral extraction," an area plaintiff apparently does not teach. Thus, the plaintiff asserts that the individual defendants conspired to deny the plaintiff tenure so as to use the plaintiff's salary amount to acquire a mining and mineral research professor, and thereby to preserve the MMRI program and its concomitant federal funds for the University.

 Construing the facts most favorably to the non-movant, *see Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142, 155 (1970) (construction of facts favorably to non-movant on summary judgment motion), the alleged acts of the defendants do not constitute a conspiracy. This court has determined that the non-tenured plaintiff had no property interest in his employment after the end of his contract period; thus, the University, through the acts of its employees in an official capacity, could decline to renew its employment contract with the plaintiff for any or no reason, *see Sindermann v. Perry*, 430 F.2d 939, 944 (5th Cir.1970), *aff'd.*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), except for constitutionally impermissible reasons such as race, religion, or exercise of rights guaranteed by the Constitution or laws. *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570, 577 (1972); *Ferguson v. Thomas*, 430 F.2d at 857. Since the University was empowered not to rehire the plaintiff in order to obtain another professor possessing different qualifications, the alleged actions of the defendants in their official capacities would not have been wrongful.[9] *NAACP v. Claiborne Hard-*

7. However, 30 U.S.C. § 1230(b) (1984) provides that a university program found eligible under the Surface Mining Control and Reclamation Act of 1977 shall be considered "eligible" for the MMRI program for a period of four fiscal years beginning October 1, 1984.

8. In 1981, the Accreditation Board for Engineering and Technology (ABET) issued an order requiring the University Department of Geology and Geological Engineering to "show cause" why the Bachelor of Science degree in Geological Engineering should not lose national accreditation. This degree became non-accredited effective September, 1985.

9. Furthermore, a university, like a corporation, cannot conspire with itself. *See, e.g., Lieberman v. Gant*, 474 F.Supp. 848, 875 (D.Conn.1979) (bar of intracorporate conspiracy doctrine to

*ware Co.,* 393 So.2d 1290, 1301 (Miss.1980) (conspiracy must be tainted with illegality, requiring agreement either to do unlawful act or to do lawful act by unlawful means), *amended,* 405 So.2d 115 (Miss.1981), *rev'd. on other grounds,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982).

Although individual defendants in their individual capacities conceivably could conspiratorially deprive an employee of his employment, there is no allegation in this case that the individual defendants took any actions other than in their University employment capacities. Thus, the plaintiff cannot prevail on this claim against the individual defendants in their individual capacities. *Cf. Nelson Radio & Supply Co. v. Motorola,* 200 F.2d 911, 914 (5th Cir. 1952) (no conspiracy action against individuals absent allegation that corporate agents acted outside their normal capacities).

Accordingly, the defendants' motions for summary judgment as to this cause of action are well taken and will be granted.

### 3. First Amendment Claim

#### (a) Tenure Denial

The plaintiff also contends that tenure was denied in retaliation for his exercise of first amendment free speech rights, and that such action violated his fourteenth amendment due process rights.[10] *See NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 907 n. 43, 102 S.Ct. 3409, 3422 n. 43, 73 L.Ed.2d 1215, 1232 n. 43 (1982) (first amendment freedoms protected by fourteenth amendment from invasion by state). Specifically, the plaintiff claims that the tenure denial was due to his public criti-

cism of the University's method of disposing of the remains of laboratory animals.[11]

Even though the plaintiff has no expectancy of tenure amounting to a property interest, he cannot be deprived of employment for assertion of constitutional rights. *See Perry v. Sindermann,* 408 U.S. at 597, 92 S.Ct. at 2697, 33 L.Ed.2d at 577; *Ferguson v. Thomas,* 430 F.2d at 857. The parties dispute the basis for the tenure denial; thus, a genuine issue of material fact exists regarding this cause of action.

The plaintiff has asserted his first amendment cause of action against the individual defendants in both their official and their individual capacities. Approval or disapproval of the tenure application was an employment duty of the defendants; therefore, the defendants' actions were only within their official capacities. Thus, the individual defendants' motions for summary judgment as to the first amendment claim will be granted as to claims asserted for actions in their individual capacities but will be denied as to claims asserted for actions within their official capacities. *Cf. Lloyd Corp. v. Tanner,* 407 U.S. 551, 567, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 131, 142 (1972) (first amendment limitation on acts by state rather than private parties); *Peterson v. Talisman Sugar Corp.* 478 F.2d 73, 81 (5th Cir.1973) (same). Furthermore, the first amendment claim against the individual defendants for actions within their official capacities will be limited as hereinafter provided.

#### (b) Eleventh Amendment Bar

Although the plaintiff has alleged a viable first amendment claim against the individual defendants for actions taken in

conspiracy action against officers and employees of university for acts in official capacity), *aff'd. on other grounds,* 630 F.2d 60 (2d Cir. 1980); *Johnson v. University of Pittsburgh,* 435 F.Supp. 1328, 1370 (W.D.Pa.1977) (same); *Keddie v. Pennsylvania State University,* 412 F.Supp. 1264, 1276 (M.D.Pa.1976) (same); *cf. Webb v. Culberson, Heller & Norton, Inc.,* 357 F.Supp. 923, 924–25 (N.D.Miss.1973) (corporate action through officials and representatives not conspiracy with corporation). Since a university acts through its employees, *cf.* 357 F.Supp. at 924 (corporation acts through officers and rep-

resentatives), the alleged official acts of the individual defendants are not actionable.

**10.** The plaintiff also alleges an unspecified deprivation of his first amendment right to free association. Inasmuch as the plaintiff advances no argument regarding this allegation, the court treats such claim as abandoned.

**11.** Subsequent to the plaintiff's public criticisms, the University changed its method of laboratory animal disposal.

their official capacity, the eleventh amendment limits the relief available. *See, e.g., Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67, 78 (1984) (eleventh amendment immunity of state agencies, officials, and employees when the real, substantial party in interest is state). In the present case, a retrospective award of money damages would come from state funds; thus, summary judgment is appropriate as to the damages claim against the individual defendants in their official capacity. *See Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662, 673 (1974) (eleventh amendment bar to suit by private parties for retrospective liability to be paid from public funds in state treasury). Accordingly, the plaintiff may seek only injunctive and declaratory relief from the University and present Chancellor Gerald Turner for the actions of the individual defendants within their official capacities.[12]

### 4. Pendent State Claim

 Finally, the plaintiff asserts a pendent state claim of defamation against defendant Allie Smith, Dean of the School of Engineering, apparently for derogatory statements allegedly made by Smith during his evaluation of the plaintiff.[13] Pendent jurisdiction is a doctrine of discretion, *see United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228 (1966), and depends on considerations of judicial economy, convenience, and fairness to litigants. *Id.* Inasmuch as the court has granted summary judgment on the plaintiff's claim of a liberty interest deprivation, which cause requires publication, judicial economy is not promoted by exercise of pendent jurisdiction over a state law defamation claim. Accordingly, this

court declines jurisdiction over this pendent state claim.

### Conclusion

Summary judgment is appropriate and will be granted as to the individual defendants, the University, and present Chancellor Gerald Turner on all claims except for the plaintiff's alleged claim that he was denied tenure because of his exercise of his first amendment rights. With respect to this first amendment claim, the summary judgment motions will be denied; however, for the reasons heretofore stated, the first amendment claim is limited to only declaratory and injunctive considerations.

An order will issue accordingly.

---

12. Qualified immunity applies to actions of the individual defendants in their official capacity unless such actions deprive the plaintiff of "clearly established rights." *See Davis v. Scherer,* 468 U.S. 183, ——, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139, 147 (1984). Inasmuch as the plaintiff's first amendment free speech rights are clearly established, the court cannot hold as a matter of law that the defendants' actions in their official capacities were protected by qualified immunity in this case.

13. The plaintiff alleges unidentified "state law" claims, but actively argues only defamation against defendant Allie Smith. Thus, this court treats any other state law claims as abandoned.