**Gregory BENTLEY, Caroline Bentley, Plaintiffs,**

**v.**

**Joseph J. ELLAM, Defendant.**

**Civ. A. No. 3:CV–90–1138.**

United States District Court,
M.D. Pennsylvania.

May 15, 1991.

---

Horace D. Nalle, Clare Keefe Foster, Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiffs.

Richard Douglas Sherman, Office of Atty. Gen., Harrisburg, Pa., John O. Shel-

lenberger, Deputy Atty. Gen., Philadelphia, Pa., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

The defendant, Joseph J. Ellam, currently the Director of the Bureau of Dams and Waterway Management in the Pennsylvania Department of Environmental Resources (DER), has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. The plaintiffs, Gregory and Caroline Bentley, filed this 42 U.S.C. § 1983 action seeking redress for the diminution in the value of their real estate in Chester County, Pennsylvania, resulting from their neighbors' operation of a hydroelectric plant on a stream dividing their properties. When Ellam was the Chief of the Division of Dam Safety in the DER, he had issued the permit authorizing the plaintiffs' neighbors to build the plant. Ellam acted pursuant to authority conferred by the Dam Safety and Encroachments Act, 32 P.S. § 693.1 *et seq.* (Purdon Supp.1990–91), and implementing regulations.[1]

The plaintiffs allege that Ellam issued the permit without notice to them, thereby violating their right to due process under the fourteenth amendment. In opposing the defendant's motion for summary judgment, the plaintiffs also briefed the question whether the complaint supports a taking claim under the fifth amendment. The defendant has responded to that contention in his reply brief. We will evaluate the motion for summary judgment under the well established standard. *See Williams v. Borough of West Chester,* 891 F.2d 458 (3d Cir.1989).

### II. *Background.*

The plaintiffs' property is divided from that of their neighbors by a stream called Buck Run. A dam, which dates from the late eighteenth century, runs across the stream. The plaintiffs and their neighbors are co-owners of this dam. At the time the plaintiffs were thinking about purchasing their property, Buck Run flowed steadily over the dam and created "an attractive waterfall." (Affidavit of Gregory Bentley, ¶ 9).

In October of 1982, the plaintiffs entered into a written agreement to purchase their property from the previous owner but on the date of settlement the seller reneged. On January 11, 1983, the Bentleys filed a lis pendens on the property. The plaintiffs did not obtain title to the property until February of 1986.

In the meantime, in February of 1985, the neighbors applied to the DER for a permit to build the plant which was eventually constructed in an old millrace on the neighbors' property. The Bentleys received no notice of the application although their lis pendens was on file. The neighbors represented to the DER that the previous owner of the Bentleys' property had no objection to the plant but they did not obtain her signature on the permit application as required by DER regulations. *See* 25 Pa.Code § 105.13(g) ("An application shall be signed by the owners of the dam or reservoir...."). Nevertheless, defendant Ellam issued the permit on June 13, 1985.[2]

The plaintiffs allege that so much water is now diverted for the use of the hydroelectric plant that the stream no longer flows freely and almost continuously over the dam, and that the waters above the dam have become stagnant, noisome, and a source of mosquitoes. As noted, they would hold Ellam responsible, principally because he issued the permit without notifying them and giving them an opportunity to be heard prior to his doing so.

### III. *Discussion.*

#### A. The Statute of Limitations Issue.

█ The defendant asserts that the plaintiffs' complaint is barred by the stat-

---

1. Plaintiff had also sued the DER but voluntarily dismissed the action against that defendant pursuant to Fed.R.Civ.P. 41(a)(1)(i) on October 9, 1989.

2. The parties make much of a factual dispute concerning whether the neighbor had actually agreed to the neighbors' plans. This factual dispute is immaterial to the plaintiffs' claims, as will be shown herein.

ute of limitations because this lawsuit was filed on July 2, 1989, more than two years after defendant issued the permit. The Third Circuit has adopted for use in section 1983 actions the two year Pennsylvania statute of limitations for personal injuries. *See Smith v. City of Pittsburgh*, 764 F.2d 188 (3d Cir.1985). Further, in addressing the discovery rule exception to the limitations defense, Ellam asserts that the plaintiffs knew or should have known about the issuance of the permit because notice was published in the Pennsylvania Bulletin of the application for it on March 16, 1985, and of the actual grant of the permit on June 29, 1985. The Pennsylvania Bulletin is the governmental publication providing notice of agency action.

The plaintiffs counter that they could not have discovered the existence of the permit until they actually did find out about it on July 22, 1987, when they attended a scenic rivers meeting at the invitation of the DER.[3] This lawsuit was filed on July 21, 1989, and is therefore timely. They also argue that it is not reasonable for the DER to expect them to have perused a governmental publication not read by the general public on the chance that there might be something in it which would affect their rights.

We agree with the plaintiffs. The Bentleys should not be held on summary judgment to have notice of the permit proceedings through publication in the Pennsylvania Bulletin, which is not a publication of general circulation. Therefore, on the ground advanced by the defendant, his motion for summary judgment based upon the statute of limitations must fail.

■ We also disagree with the defendant's position that, once he raised the limitations defense, the burden shifted to the plaintiffs to show that their action was timely. This is not a case where it appears from the face of the complaint that the action is barred. Thus, the burden remained with the defendant to show that it was. He failed to meet that burden with

the argument advanced—that the Bentleys, without more, should have been aware of the contents of the Pennsylvania Bulletin.

B. Joinder of the Neighbors Under Fed. R.Civ.P. 19(a)(2)(i).

■ Defendant contends that the neighbors should be joined pursuant to Fed.R. Civ.P. 19(a)(2)(i). That rule provides as follows:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest....

Ellam asserts that the neighbors have an interest in the permit that may be affected by any injunctive relief which might be granted to the Bentleys. For example, the permit may be invalidated so that the neighbors would lose their right to operate the hydroelectric plant. Ellam also contends that the neighbors are more than just witnesses. They were active participants in the DER proceedings. Hence, they should be joined as to the request for injunctive relief or the claim for injunctive relief should be dismissed.

Generally, a court may reject an argument like the defendant's if a person's interest in the litigation is fully represented by an existing party. See *Owens–Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1191 (3d Cir.1979); *Pujol v. Shearson/American Express*, 877 F.2d 132 (1st Cir.1989). The neighbors' interest in this litigation is the same as the defendant's. The neighbors would, as the defendant is now doing, seek to uphold the constitutionality of the permit proceedings. Thus, we conclude that the neighbors do not qualify

---

**3.** This meeting was held in connection with proceedings under the Pennsylvania Scenic Rivers

Act. 32 P.S. § 820.21 (Purdon Supp.1990–91).

as parties to be joined if feasible under Rule 19(a)(2)(i).

As further support for this conclusion, we note that, according to their opposition brief, the injunctive relief the plaintiffs are seeking would only require that the defendant hold a new hearing on the permit application. The relief sought in the instant case would therefore not have a direct and adversely permanent effect upon the neighbors' right to use the hydroelectric plant. It would only compel them to meet the plaintiffs' objections and to show that the plant is otherwise in accord with Pennsylvania law. Of course, the neighbors will be affected by the judgment to the extent that they may be required to do this, but we do not believe that every impact upon a nonparty requires joinder. We turn now to the merits of the plaintiffs' complaint.

### C. The Due Process Claim.

■ The due process clause of the fourteenth amendment protects against the deprivation of life, liberty or property without due process of law. *See Unger v. National Residents Matching Program,* 928 F.2d 1392 (3d Cir.1991). In the instant case, we are concerned with whether the plaintiffs have identified a property interest arising under state law by which they can invoke the protection of the fourteenth amendment.

Defendant asserts that the due process claim must fail because it is undisputed that at the time the permit was processed the plaintiffs did not have legal title to the property. Without legal title, they had no property interest and consequently no right to notice or an opportunity to be heard.

It is true that the plaintiffs did not have legal title at the time in question but that is not the only property interest in real property recognized under state law. Plaintiffs assert that one such right recognized under Pennsylvania law is the beneficial interest or equitable title they acquired in their real estate when the previous owner executed the agreement of sale. We agree. *See Payne v. Clark,* 409 Pa. 557, 561, 187 A.2d 769, 770 (1963) (an executed agreement of sale vests in the buyer an equitable title to the real estate). *See also generally, Byrne v. Kanig,* 231 Pa.Super. 531, 332 A.2d 472 (1974). Significantly, when the seller reneges, the buyer can enforce his rights in the property by an action for specific performance requiring the seller to transfer the property. *Id. See also Pivirotto v. City of Pittsburgh,* 515 Pa. 246, 250, 528 A.2d 125, 127–28 (1987) ("It is precisely because of the equitable remedy of specific performance that fundamental real property rights are created in a purchaser of realty prior to delivery of the deed."). The buyer's equitable interest in real property is thus not a mere "unilateral expectation" but is instead "a legitimate claim of entitlement to it." *Unger, supra,* 928 F.2d at 1397 (quoted cases omitted).

Because of this equitable interest, we believe that the plaintiffs can rely upon the riparian rights normally associated with ownership.[4] The owner of land adjoining a stream has riparian rights in that stream. *Standard Plate Glass Co. v. Butler Water Co.,* 5 Pa.Super. 563, 582 (1897). Among those riparian rights, for present purposes, is the right to have the stream flow in its natural quantity past the owner's land without obstruction by another owner adjoining the stream. *Scranton Gas & Water Co. v. Delaware, Lackawanna & Western Railroad Co.,* 240 Pa. 604, 88 A. 24 (1913); *Fiedler v. Coen,* 351 Pa.Super. 102, 505 A.2d 286 (1986); *Standard Plate Glass, supra.*

We reject the defendant's contention that the Bentleys' concern with the alleged adverse impact of his conduct upon the aesthetic and monetary value of their land destroys their due process claim. *Fiedler* makes clear that the right to an unimpeded flow of water is enforceable in itself. Moreover, the trial court opinion supports the position that aesthetic values may be

---

**4.** Plaintiffs have asserted other property rights but we need only discuss their riparian rights

for the purposes of the defendant's motion.

taken into account. *See* 32 Chester Co. Rep. 305 (1984).

We also reject the defendant's reliance upon *Guthrie v. Alabama By–Products Co.*, 328 F.Supp. 1140 (N.D.Ala.1971), for the proposition that riparian rights, being "property" rights rather than "personal" ones, are not protectible under 42 U.S.C. § 1983. The Supreme Court's subsequent case law establishes otherwise. *See Dennis v. Higgins*, —— U.S. ——, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991) (section 1983 is to be construed broadly, citing *Lynch v. Household Finance Corp.*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972) which rejected a distinction between personal and property rights under section 1983).

Finally, we reject the defendant's reframing of the plaintiffs' claim as one based upon their lis pendens. The plaintiffs are not claiming that the lis pendens conferred a property right upon them. The lis pendens is important only to the extent, as discussed below, that it gave the defendant notice of the Bentleys' equitable interest.

■ Defendant next contends that, in any event, the Bentleys received all the process that was due them when notices of the permit application and the decision granting the permit were published in the Pennsylvania Bulletin, which defendant asserts is the accepted form of notice to the general public. Defendant argues that, with those notices, the plaintiffs had an opportunity at those times to appear and be heard. They could also have had judicial review of an adverse agency decision. Ellam relies upon *Save Our Dunes v. Alabama Department of Environmental Management*, 834 F.2d 984 (11th Cir.1987), in support of the adequacy of the notice here.

We agree with the plaintiffs that *Save Our Dunes* is easily distinguishable. In that action, several non-profit groups with an environmental interest in the Alabama coastline sued the defendant governmental agency to require it to send them notice of

final actions on every permit application made in connection with a particular coastal zone. The plaintiffs could not show any other interest except that of the general public. The Eleventh Circuit held that notice of permit applications published in two newspapers of general circulation in the coastal zone satisfied the notice requirement of due process.

In the instant case, on the other hand, we have already established that the plaintiffs had a property interest in their land at the time of their neighbors' application. They had also filed a lis pendens whose purpose, of course, was to give notice of that interest. The existence of the lis pendens should have been easily ascertainable. In these circumstances, as plaintiffs have argued, *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), requires us to reject the defendant's argument that notice given in the Pennsylvania Bulletin was sufficient to satisfy due process in connection with the plaintiffs.

In *Adams*, the Supreme Court held that due process was violated when a mortgagee of real property received only constructive notice of a tax sale of the property by publication and by posting in the county courthouse when the mortgagee had previously recorded the mortgage at the courthouse. The Court stated:

> Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. [citation omitted]. When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service.

*Id.* at 798, 103 S.Ct. at 2711, 77 L.Ed.2d at 187 (brackets added). Similarly, constructive notice, albeit given in accordance with state law, was not sufficient here when the Bentleys and their property interest were identifiable by the lis pendens.[5]

5. Based on this conclusion, the defendant's reference to the procedural rights the DER affords interested persons in connection with a permit application is irrelevant. The Bentleys are com-

328

D. The Taking Claim.

█ The plaintiffs have also alleged that the defendant took their property unconstitutionally. Unlike the usual fifth amendment claim where private property is taken for a public use without just compensation, U.S. Const. amend V, the plaintiffs claim here that Ellam took their property for the private use of their neighbors. Nevertheless, they contend that, under *Missouri Pacific Ry. Co. v. Nebraska*, 164 U.S. 403, 17 S.Ct. 130, 41 L.Ed. 489 (1896), this claim is valid under the fifth amendment.

It is unsettled whether the source of the right is the fifth amendment or the fourteenth amendment. *See Coniston v. Village of Hoffman Estates*, 844 F.2d 461, 464–65 (7th Cir.1988) (discussing *Missouri Pacific* and other cases). We reject the defendant's argument, however, that no constitutional claim has been asserted. We will not discuss defendant's objections in detail, including his argument that the taking claim must fail because the plaintiffs have not alleged a domestic or business need for the water. We will only note here that, as discussed above, the right to receive water flowing in a stream in its natural quantity and quality is one of many property rights inhering in the ownership of land. Although it is only one of many rights, the owner is entitled to the value of that right when it has been taken by the government. It has long been established that a landowner is entitled to compensation for the taking of riparian rights alone. *See, e.g., Ball v. United States*, 1 Cl.Ct. 180 (Cl.Ct.1982).

We therefore conclude that on the issues presented by the parties on the taking claim that the defendant's motion for summary judgment must be denied.

E. The Eleventh Amendment.

█ Defendant claims that the action is barred by the eleventh amendment but bas-

es this argument on his characterization of the plaintiffs' complaint as one based solely on state law violations in connection with notice to them of the permit and the application for it. This is not an unreasonable interpretation of the complaint, given the plaintiffs' emphasis upon Ellam's violations of DER regulations requiring the signature of all the owners on the permit application. And if this action was based solely on state law, defendant's position would be correct, at least as to the claim for injunctive relief. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). However, the plaintiffs' complaint is predicated on violations of their federal due process, and possibly, fifth amendment rights. We therefore have jurisdiction.[6]

plaining about the lack of notice, which prevented them from even exercising those procedural rights.

**6.** In footnote 11 of his supporting brief, defendant contends that he cannot be sued in his official capacity. That is true. But he can be

sued in his individual capacity. Thus, until the defendant focuses his argument more narrowly, we see no reason why this general statement of the law should preclude our consideration of this case.